We'll hear the final case, Spicola v. Unger. Thank you. May it please the court, I'm Tom Cunningham for the petitioner appellant Michael Spicola in what was a habeas corpus proceeding below. This appeal is narrowed to a single issue by this court, namely whether the state court's decision to the effect that a failure to call or consult with a child sexual abuse accommodation expert was not ineffective counsel under Strickland. And our goal today is to decide whether that decision is an unreasonable application of the Strickland doctrine dealing with this type of testimony. The parties generally agree on the standard of review here. Under Strickland, we must prove that counsel's conduct was objectively deficient and resulted in tangible prejudice to the petitioner. Respondent adds in their brief, and no reasonable jurist would disagree. No authority is cited for that proposition, and I can find none at this moment to support it. Do you agree that, under Gersten, that trial counsel is not required to consult or call an expert on CSAAS, but that counsel has the option of trying to educating himself or herself about the relevant scientific issues? Isn't that the standard of Gersten? Yes. I think the law as it stands now is there is no requirement to call an expert, but you have an obligation to be educated. And in cases where — How is it that, in this case, the trial counsel did not sufficiently educate himself about CSAAS? Well, because he deprived himself of all of the various testimony the expert presented by petitioner provided, all of which would establish both plausible and reasonable exculpatory evidence for the petitioner. And we point that out. How is his cross-examination not competently conducted? Well, as we argue in the brief, it would have helped in numerous cases, obviously dealing with the expert itself, because we would then have had — or the petitioner would then have had an expert coming in to dispute that expert. So the cross-examination could have addressed very specifically a number of issues that would otherwise just float out there, with there being no opposition. When he continued to make the case that he did up to the New York Court of Appeals, and the New York Court of Appeals, there were — in dissent, there were three votes, I believe, on his side, including from Chief Judge Lippman. Correct. Doesn't that suggest that his representation was objectively competent? Well, in the same decision, the Court of Appeals majority noted that counsel failed to object to the bolstering and put in appropriate objections so they could be appealed. On a central issue, doesn't it suggest that, to the extent that the — one of the standards or part of the standard is that reasonable jurists could differ, doesn't it suggest that you could view the performance of counsel here as competent? Not great, but competent. Well, we insist that's not the case because we are proving with an affidavit of Dr. Mack that the case was not provable without him. And when you take a look at his affidavit and you see what he has to say, and he's every bit as competent as the people's expert, you can see what defenses are available to the petitioner that just weren't there. And your position must be, and of course we'll never be able to figure this out because of pinholster, but your position must be that there is no rational way to look at counsel's performance and view it as a tactical decision not to use Dr. Mack. In this case, under these facts, our position is yes. Now, it's possible, as in the Wallace v. Poole case that is cited in Respondent's Brief, that counsel could have done — created some miracles, as the lawyer did there in his cross-examination and got some pretty juicy admissions from the expert. I doubt that will happen again because in this area, the prosecutors are very specialized, very experienced, and very good. And the next expert's going to know how to turn that on its head against the lawyer who thinks he's going to get away with cross-examining the expert. Can I ask you about the state habeas? It's the 440.10 hearing, the state habeas. Because after he went through the Court of Appeals, New York Court of Appeals, it said, we can't decide the ineffective assistance issue because it goes beyond the record. So then it goes to what we would call the state habeas, the 440.10 hearing. And then we have to afford some epidefference to the decision of that judge, right? Correct. Yes, we are required to give deference to that. So I'm curious, though. There was no hearing conducted for the state habeas, and there's no testimony or affidavit from the lawyer, Daniels. Why was it that you didn't do this? It seemed to have invited that, as Chief Judge Katzen says, with a split on the Court of Appeals. It seemed as if that would be a major issue. What was Daniels thinking when he didn't . . . because the MAC affidavit was before the state habeas judge. Right. But what was Daniels thinking when he didn't do more to cross-examine Berkowski at the trial? Can you tell me what happened? Why wasn't that developed? I don't know why Respondent chose to proceed that way. In Gerstin, you had the problem of a judge that actually said it affected my decision, and still you were able to rule as you did. But clearly, the opportunity was there to request a hearing at the 440 proceeding. The people chose not to. They, by doing that, they let . . . Because his affidavit said, he told me the night before, it's no point of having our own expert. Why wouldn't the petitioner have called Daniels or gotten an affidavit and had a hearing in the 440 for state habeas? I mean, do you know? I'm just curious to me that with all this buildup and a split in the New York Court of Appeals, and there's this open question in our two decisions about whether this is trustworthy evidence. You'd think then the next stage of the state habeas would be, well, we've got to put Daniels on the stand and say, why was it that you didn't prepare more for the cross, at least by consulting your own expert or calling your own expert? I'd only be speculating, as you are, Your Honor, but I think that it could have been a very tactical decision to not let the people get another bite at Dr. Max's affidavit, which was sat there uncontroverted up to this point. And Mr. Daniels is, I guess, the most experienced trial lawyer, presumably in Buffalo. I don't imagine he'd be easy to trip up on cross. It probably was a very tactical decision to not do that on the part of the petitioner. Thank you. Good morning, Your Honors. May it please the Court, Nicholas Texedo of the Erie County DA's Office for the Appellees. I would first, and usually I wouldn't discuss the standard, but first I do want to clarify, because counsel takes issue with it. The issue is not whether this court would find ineffectiveness if the court was reviewing it in the first instance, but whether declining to find ineffectiveness on the state court's part was objectively unreasonable. So when I say that no reasonable jurist could decline to find ineffectiveness is the standard, it is the standard, because it would have to be an unreasonable decision. How do we make of the state's habeas decision where it says the defendant has not shown that an expert was available and willing to rebut the testimony of the social worker as to the validity of CSAAS when the MAC affidavit was before that habeas court in New York? Yes, Your Honor. The MAC affidavit at first blush looks great for the defense. It looks very convincing and it looks like it would provide great testimony. But when you peel off the layers of that affidavit, MAC's testimony would either be of no value to the defense or would actually be harmful to the defense. Let me tell you why. MAC says that when three assumptions exist, the theory has no relevance. And all three of these assumptions have to exist for the theory to have no relevance. One, that the alleged abuser is not and was never in a position of authority and control over the alleged victim. Now, in this case, we know that assumption does not exist because the defendant or the petitioner was the sole adult supervisor of this young child on sleepovers, in public, at sporting events, all sorts of other activities. He was an older cousin, a family member, and he was the only adult responsible for this child at times. Number two, the second assumption that has to be present for MAC to say that the theory has no relevance, that the alleged victim knows in advance that his family will believe him. There's no evidence in this case, and there was no evidence, that this alleged victim knew in advance that the family will believe him. In fact, the expert testimony on child sexual abuse accommodation syndrome is that victims, under the concept of the first concept of the theory, is that adults will cover it up. So victims tend to think that if they go and tell their parents or some other adult, that that adult is going to cover up for the other adult, and that's part of the theory. And MAC didn't testify, right, at the state habeas? No, he didn't. I'm going off of his affidavit. Why was there no hearing? We opposed running a hearing because the defendant wasn't entitled to it. He didn't establish facts that, if true, would entitle him to vacatur of the conviction. So the hearing is only appropriate where there's a factual dispute, and where he actually alleges facts that, if true, would warrant vacatur of the conviction. And if you hear just on the face of the record, it's clear that counsel educated himself sufficiently on the testimony prior to the trial. Did the petitioner ask for a hearing? Do you know? I believe in his affidavit. It's almost a pro forma thing that they, in the wherefore clause, they'll say that they request vacatur of the conviction or in the alternative, a hearing. And we opposed that, and the court denied that. Isn't it, to some extent, at least irrelevant, MAC's testimony in this habeas petition? Because, as I understand it, the habeas petition before us doesn't present the question of whether C.S.A.S. is scientifically strong or sound, or whether it was even appropriately used in this case. It's whether the representation of the lawyer was objectively reasonable. Yes. And if not, whether Spicola was prejudiced. Yes, I think the reason MAC's affidavit is here is to say that counsel should have called MAC, and that if he would have looked, he would have found this great expert who would have blown the people's case wide open. It's simply not the case, Your Honor. I was talking about these assumptions that must be present in order for MAC to say the theory has no relevance. The third is that, and this one is the one that's the most clear, that it's not present, that there's no pressure, including emotional pressure, to be in the abuser's presence. We're talking about a younger cousin and an older cousin, where the older cousin would take this person to Sabres games, Buffalo Sabres, I forgot I'm out of town for a second, would play knee hockey with him, have him for sleepovers, wrestle with him, and to say that there's no emotional pressure for the alleged victim to be in the alleged abuser's presence, it borders on ridiculous, Your Honor. What about in the MAC affidavit, though? He does kind of say that the whole area is junk science. Apart from whether MAC had testified, the three points you make wouldn't have applied to this situation, he does say that there are substantial grounds to question the scientific reliability of that theory in this situation, which is consistent with our Gersten decision, and his as well. Well, he says at the end of that sentence, Your Honor, is for discovery of the underlying facts and ultimately the truth in this particular situation based on the information available to me. And the information given to him, as I just went through, was flawed and faulty information. So of course the theory wouldn't apply based on the information that was given to him. That's number one. Number two, the expert testimony, the people's expert here, was a little different than Gersten, because I believe the science has evolved since then. And in Gersten, the doctor's affidavit said that viewing the five stages as almost like a five-step process every child goes through is not scientifically reliable, and also that it's not scientifically reliable for diagnostic purposes to see if the victim is telling the truth. On the first issue, that testimony was not present in our case because the expert's aware that it's not scientifically available for that reason. On the second point, the people's expert conceded on direct examination before counsel ever stood up that this is not to be taken as a diagnostic tool or any indication that the abuse, in fact, did happen. What it was to be taken as is a generalized explanation of behaviors. And Mack does not say anywhere in his affidavit that that is not the case. But ultimately, I want to just make sure I understand why you're going through all this. You're not relying on the fact that there's an affidavit or that the affidavit from Dr. Mack is deficient in any number of different ways. You're relying on a few things. One, defense counsel here, maybe it was not superb, but did do some things to conduct an investigation to understand or have some understanding of CSAAS. Is that right? That's correct, Your Honor. And that's established on the face of the record of the trial. And number two, the New York Court of Appeals, at least, there's a disagreement about whether the attorney's performance was deficient. There was not disagreement as to whether it was deficient, but he created disagreement as to whether, in the state's highest court, as to whether this testimony should have been admitted at all. And that was based on the argument. That's right. Yes, there were those two things. Also, in cross-examination, he elicited from the expert that it's quite possible that the reason this victim delayed so long in disclosing was that he was fabricating it all. So he was able to get the people's own expert to say that. Look, you would agree that that cross-examination was not the best cross-examination. It lasted 10 pages on a transcript. It's the only testimony, really, that buttresses Dane's testimony. Is that correct? Not the only. There is the nurse practitioner who can talk about his demeanor. There's the victim's mother who talks about the young boy's reaction when the petitioner tickled him. It was to recoil into a fetal position and to start acting strange. So there was other stuff that buttressed his testimony. But I would say that, yes, this did buttress the child's testimony. I don't think I would concede that the cross-examination wasn't good. The problem with the cross-examination is that this is valid science. So what he was able to get out was that the person was not a doctor, knew, did not have familiarity with the case, and that he has no idea why this delay, in fact, happened, and that the reason could be because the child was fabricated. I would just like to say what he also did. He crafted and received a long, detailed jury instruction to where the jury was instructed that they were permitted to consider the delay in determining whether the child was telling the truth. And then he wove that jury instruction into his summation and made what I think was an effective argument that the jury should consider the child's delay in determining whether or not he was telling the truth. Thank you. Is he on probation? He would, at this point, be on post-release supervision. And how long is that going to last? Five years. He was just released from prison, I believe, in August. So he would have started his five-year post-release supervision term. Thank you. Thank you, Your Honors. Mr. Cunningham, you'll have two minutes. Thank you, Your Honor. On the issue of the precondition for application of the theory in the first place, I'm not going to try to address all of what counsel said or the brief says, but I would ask the judge to look carefully at that brief. There's very few references to the record, and there's very few declarative statements that don't have much support. For example, a fetal position is supposed to mean something. When I was tickled by my brothers, that's the position I got in because that's the way you don't get tickled anymore. I just, you know, we're into a fantasy land here now. Everything means something more than it really does. And as far as the preconditions on CSAAS goes, we could concede that argument. That wouldn't alter a thing. All right, so it shouldn't have been by its own terms it should have applied to this case. Dr. Max says it's simply not a scientifically reliable tool in these circumstances to get at the truth, and that's what we needed to do. The New York Court of Appeals was very careful to point out if CSAAS is admissible here in New York. Why? Because they didn't have a record like this court had in Kirsten, i.e., they didn't have the other affidavit. They didn't have Dr. Jewell. Well, guess what? The court was as much saying maybe if we had that record we would have held otherwise. And I think that's the primary points I'd want to make, other than to say that I really think the prejudice element of the Kirsten test here, that the facts in this case are much more significant in terms of the prejudice to Petitioner than they were in Kirsten itself. Thank you. Thank you both for your arguments. The Court will reserve decision. The clerk will adjourn court.